UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JULES ROTHAS, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 08-cv-01120 |
| | : | |
| | : | **CLASS ACTION** |
| Plaintiff, | : | |
| | : | COMPLAINT FOR VIOLATIONS OF |
| vs. | : | FEDERAL SECURITIES LAWS |
| | : | |
| MUNICIPAL MORTGAGE & EQUITY L.L.C., MARK K. JOSEPH, MICHAEL L. FALCONE, WILLIAM S. HARRISON, MELANIE M. LUNDQUIST and DAVID B. KAY, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Municipal Mortgage & Equity L.L.C. ("MuniMae" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the securities of MuniMae between May 3, 2004 and January 28, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Jules Rothas, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of MuniMae at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant MuniMae and its subsidiaries arrange debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services for institutional investors.

8.      (a)     Defendant Mark K. Joseph ("Joseph") was Chairman and Chief Executive Officer of MuniMae until December 2004.  Joseph is, and at all relevant times was, the Company's Chairman.

        (b)     Defendant Michael L. Falcone ("Falcone") has been MuniMae's President and Chief Executive Officer since January 2005.  Prior to that, Falcone was the Company's President and Chief Operating Officer.

        (c)     Defendant William S. Harrison ("Harrison") was MuniMae's Executive Vice President and Chief Financial Officer until December 2005.

        (d)     Defendant Melanie M. Lundquist ("Lundquist") was MuniMae's Chief Financial Officer from December 2005 to July 2007.

        (e)     Defendant David B. Kay ("Kay") has been MuniMae's Chief Financial Officer since November 2007.

        (f)     Defendants Joseph, Falcone, Harrison, Lundquist and Kay are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal

corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications, as alleged herein, are the collective actions of the narrowly-defined group of defendants identified above.  Each of the above officers of MuniMae, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, was traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that

the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with MuniMae, each of the Individual Defendants had access to the adverse undisclosed information about MuniMae's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about MuniMae and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MuniMae common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.

The scheme: (i) deceived the investing public regarding MuniMae's business, operations, management and the intrinsic value of MuniMae common stock; (ii) enabled Defendants Falcone, Harrison and Joseph and other Company insiders to sell 490,197 shares of their personally-held MuniMae common stock for gross proceeds in excess of $12.5 million; (iii) allowed the Company to raise gross proceeds of $68.3 million through the public offering of 2,575,000 common shares; (iv) enabled certain subsidiaries of the Company to raise capital through private placements; and (v) caused Plaintiff and other members of the Class to purchase MuniMae common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of MuniMae during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MuniMae common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by MuniMae or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts, as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MuniMae; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     Defendant MuniMae and its subsidiaries arrange debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services for institutional investors.

22.     As detailed further herein, Defendant MuniMae has announced that it will be restating its financial statements for the years ended December 31, 2004 and 2005 and possibly for the year ended December 31, 2006 and subsequent years.  The restatement is an admission that MuniMae's Class Period financial statements were materially false and misleading when issued.

23.     The Class Period begins on May 3, 2004.  On that date, MuniMae issued a press release announcing its financial results for the first quarter of 2004, the period ending March 31, 2004.  For the quarter, the Company reported net income allocated to common shares of $1.2 million, diluted earnings per share of $0.04 and cash available for distribution ("CAD") per common share of $0.37.  Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> We are very pleased with the Company's results for the first quarter.  As we had previously advised our investors, we expected first quarter results to come in below the prior-year figures due to seasonality in our tax credit equity syndication business, which we significantly expanded through a July 2003 acquisition.  While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations.  This was largely due to strong results in our tax credit equity unit during the quarter.  Based in part on the Company's results and our outlook for the remainder of the year, our Board of Directors recently raised the quarterly distribution to holders of our common shares to $0.4575, an increase of 3% over the same period in 2003.

24.     On August 2, 2004, MuniMae issued a press release announcing its financial results for the second quarter of 2004, the period ending June 30, 2004.  For the quarter, the Company reported net income allocated to common shares of $11.2 million, diluted earnings per share of $0.32 and CAD per common share of $0.61.  Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> We are extremely pleased to have been able to raise our distribution for thirty consecutive quarters.  So far this year we are outperforming our own and analysts' expectations, particularly in our tax credit equity business, and we expect to finish the year somewhere between 2% and 4% above analyst current consensus expectations of $2.22.

25.     On September 2, 2004, the Company issued a press release announcing that MFH Financial Trust I, a subsidiary of Midland Financial Holdings, Inc. ("Midland"), completed the sale of $24,000,000 of its 9.5% trust preferred securities.  Midland is an indirect wholly owned subsidiary of MuniMae.  The press release stated that "[Midland] will use the proceeds to repay a portion of an inter-company loan from MuniMae.  MuniMae, in turn, intends to use its proceeds for general corporate purposes."

26.     On November 10, 2004, MuniMae issued a press release announcing its financial results for the third quarter of 2004, the period ending September 30, 2004.  For the quarter, the Company reported net income of $11.6 million, diluted earnings per share of $0.33 and CAD per common share of $0.72.  Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> MuniMae is pleased to continue its long history of steady growth in cash generated by our businesses.  The Company has recently declared its 31st consecutive increase in its distribution to common shareholders.  Despite higher regulatory and compliance costs, particularly those related to the Sarbanes-Oxley Act of 2002 our management team continues to deliver strong results.

27.     On February 2, 2005, the Company issued a press release announcing that it raised gross proceeds of $68.3 million through the public offering of 2,575,000 common shares at a price of $26.51 per share.

28.     On March 15, 2005, the Company issued a press release announcing that MFH Financial Trust II, a subsidiary of MMA Financial Holdings, Inc. ("MMA Financial"), completed the sale of $50,000,000 of its 8.05% trust preferred securities to TABERNA Preferred Funding I, Ltd. and Merrill Lynch International.  MMA Financial is an indirect wholly owned subsidiary of MuniMae.  The press release stated that "[MMA Financial] will use the proceeds to repay a portion of a loan from an affiliate and other indebtedness of [MMA Financial] and its affiliates, and for general corporate purposes."

- 8 -

29.    On March 16, 2005, MuniMae issued a press release announcing its financial results for the fourth quarter and year end of 2004, the period ending December 31, 2004. For the quarter, the Company reported net income of approximately $5.6 million, diluted earnings per share of $0.16 and CAD per share of $0.63. Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production. As a result, our [CAD] per common share grew 9% over 2003, representing our 8th consecutive year of CAD per share growth.

With regard to certain segments of the Company, the press release stated:

> Investing Segment
>
> During the three months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $145.4 million in par value, which is a 5% increase as compared to $138.1 million for the three months ended December 31, 2003.
>
> For the twelve months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $401.6 million, which represents a 60% increase as compared to $250.4 million for the twelve months ended December 31, 2003.
>
> Of the 2004 total, $321.1 million of the financings were tax-exempt bonds secured by affordable multifamily housing properties. The remaining $80.5 million were investments in Community Development District Bonds ("CDD") secured by assessments pledged by local governments for community infrastructure projects.
>
> Tax Credit Equity Segment
>
> MuniMae's Tax Credit Equity segment ended 2004 on a very strong note. During the three months ended December 31, 2004, the Company raised tax credit equity of approximately $487.9 million bringing the Company's total tax credit equity raised during 2004 to approximately $1.1 billion. In addition to representing an increase of 99% over 2003, this accomplishment distinguished MuniMae as one of only two companies to surpass the $1 billion mark in tax credit equity raised during a calendar year. MuniMae had approximately $6 billion in tax credit equity assets under management as of December 31, 2004.

- 9 -

In addition, during the fourth quarter, the Company made equity investments in tax credit properties totaling $303.2 million. These equity investments brought the Company's total twelve-month investment activity to $846.3 million, which is an increase of approximately 86% as compared to 2003 and, we believe, a record breaking amount for the industry for a single year.

Other accomplishments of the Tax Credit Equity segment in 2004 included the establishment of a guaranteed tax credit equity program with Merrill Lynch, through which the Company raised $165 million in investor equity, and the development and implementation of a joint program to improve our marketing of tax credit equity and bond financing to developers.

Real Estate Finance Segment

MuniMae's Real Estate Finance segment production was approximately $348.1 million during the three months ended December 31, 2004, bringing the segment's total production for the twelve months ended December 31, 2004, to approximately $1.0 billion. This represents a 45% increase over the 2003 production volume and brought the segment's total assets under management to approximately $2.1 billion as of December 31, 2004.

30.    MuniMae's financial results for the fourth quarter and year end of 2004, the period ending December 31, 2004, were repeated in the Company's Report on Form 10-K, filed with the SEC on or about March 16, 2005 and signed by defendants Falcone, Joseph and Harrison, among others.

31.    On May 2, 2005, MuniMae issued a press release announcing its financial results for the first quarter of 2005, the period ending March 31, 2005. For the quarter, the Company reported net income of $2.2 million, diluted earnings per share of $0.06 and CAD per share of $0.42. Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

We had a productive first quarter and remain on track to meet our overall earnings per share and CAD per share targets for fiscal year 2005. Our business volumes continue to grow in our major business segments. In addition, during the quarter we completed a successful public offering of common equity and a private placement of subsidiary trust preferred securities, which together raised $118 million of capital. Finally, we closed a small but strategically important acquisition of an established business, which we have re-branded MMA Realty Capital and which we expect to form the cornerstone of an expanded fund management business targeting pension funds, insurance companies and other institutional investors.

With regard to certain segments of the Company's business, the press release stated:

Investing Segment: During the three months ended March 31, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $55.3 million in par value, which is a 12% increase as compared to $49.3 million for the three months ended March 31, 2004.  All of the first quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits.

Tax Credit Equity Segment: During the three months ended March 31, 2005, the Company raised $107.4 million in tax credit equity, representing an 18% increase over the three months ended March 31, 2004.  In the first quarter of 2005, MuniMae also closed its largest tax credit equity fund to date, raising $319 million from sixteen corporate investors.

Real Estate Finance Segment: MuniMae's Real Estate Finance segment production was approximately $161.3 million during the three months ended March 31, 2005, which represents a 22% decrease as compared with the three months ended March 31, 2004.  If not for a single $66.7 million construction loan transaction closed in the first quarter of 2004, we would have shown a year-over-year increase in first quarter production of 14% for this segment.

32.     On July 1, 2005, the Company issued a press release announcing that it closed on the purchase of Glaser Financial Group, Inc.  The purchase price of approximately $67 million was paid in a combination of cash and stock.

33.     On July 28, 2005, MuniMae issued a press release announcing its financial results for the second quarter of 2005, the period ending June 30, 2005.  For the quarter, the Company reported GAAP diluted earnings per share of $0.58 and CAD of $0.55 per share.  Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

MuniMae had a productive second quarter and, though our year-to-date CAD per share is essentially flat as compared with the first half of 2004, it was above our internal budget.  Moreover, based on a review of our pipeline and business prospects for the remainder of the year, we are on track to meet or slightly exceed the current analysts' consensus CAD estimate of $2.41 for fiscal 2005.

We are increasingly seeing the benefits of the diversification strategy we have pursued for the past six years.  While the persistent low interest rate environment is causing pricing pressure in some of our business lines, particularly in our tax-exempt bond business, we are simultaneously benefiting from a strong seller's market for multifamily properties, and we are seeking to take advantage of this market to

- 11 -

harvest significant gains on some of our equity investments and bonds. The regular realization of gains on sale has been part of our overall business plan for several years, and the pricing we have seen this year has generally met or exceeded our going-in return expectations for these investments. We remain committed to our strategy of diversifying our product offerings while building scale, both through acquisitions and through organic growth in our existing businesses. In this connection, we are very pleased to have closed the Glaser Financial acquisition, which gives us new product capabilities, additional scale in our DUS lending franchise, geographic diversification in our loan servicing portfolio and a strong management team.

With regard to certain segments of the Company's business, the press release stated:

Investing Segment: For the three and six months ended June 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $40.7 million and $96.0 million in par value, representing a decrease of 67% and 44% as compared to the three months and six months ended June 30, 2004, respectively. All of the second quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

Tax Credit Equity Segment: For the three and six months ended June 30, 2005, MuniMae raised $215.3 million and $322.7 million of tax credit equity, representing a decrease of 12% and 4% as compared to the three months and six months ended June 30, 2004, respectively. For the three and six months ended June 30, 2005, MuniMae invested $220.2 million and $394.2 million in tax credit properties, representing an increase of 15% and 18% as compared to the three months and six months ended June 30, 2004, respectively.

Real Estate Finance Segment: For the three and six months ended June 30, 2005, MuniMae's Real Estate Finance segment production was $315.4 million and $476.8 million, representing an increase of 4% and a decrease of 7% as compared to the three months and six months ended June 30, 2004, respectively.

34.    On November 4, 2005, the Company issued a press release announcing that MuniMae TE Bond Subsidiary, LLC ("TEB"), an indirect wholly owned subsidiary of MuniMae, completed a $100 million private placement of rated tax-exempt perpetual preferred shares with a weighted average distribution rate of 5.43%. The press release stated that "TEB intends to use the net proceeds from this offering to acquire investments that produce tax-exempt interest income and for general corporate purposes, which may include the repayment of indebtedness of TEB to an affiliated entity."

35.     On November 7, 2005, MuniMae issued a press release announcing its financial results for the third quarter of 2005, the period ending September 30, 2005.  For the quarter, the Company reported net income of $20.4 million, diluted earnings per share of $0.52 and CAD of $0.76 per share.  Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> Although our tax-exempt bond originations in 2005 have fallen significantly below 2004 levels, production volumes remain strong in our other lines of business, and the continued low interest rate environment has enabled us to sell selected investments at very attractive cap rates.  We remain confident in our outlook for the rest of the year, and based on our current pipeline, we expect CAD per share for the fiscal year 2005 to be at least $2.43.

With regard to certain segments of the Company's business, the press release stated:

> Investing Segment: For the three and nine months ended September 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $80.2 million and $176.2 million in par value, representing decreases of 6% and 31% as compared to the three months and nine months ended September 30, 2004, respectively.  All of the third quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

> Tax Credit Equity Segment: For the three and nine months ended September 30, 2005, MuniMae raised $370.2 million and $692.9 million of tax credit equity, representing an increase of 32% and 12% as compared to the three months and nine months ended September 30, 2004, respectively.  For the three and nine months ended September 30, 2005, MuniMae invested $254.5 million and $595.6 million in tax credit properties, representing increases of 22% and 10% as compared to the three months and nine months ended September 30, 2004, respectively.

> Real Estate Finance Segment: For the three and nine months ended September 30, 2005, MuniMae's Real Estate Finance segment production was $726.8 million and $1,240.2 million, representing an increase of 293% and 78% as compared to the three months and nine months ended September 30, 2004, respectively.  Increased production in this segment was driven largely by taxable debt production from the business formerly known as Glaser Financial, acquired on July 1, 2005, and production within the Company's fund management business, which grew significantly as a result of an acquisition that closed in February 2005.

36.     On March 10, 2006, the Company issued a press release announcing that it restated net earnings for the nine month period ended September 30, 2005, as well as fiscal years 2004, 2003 and 2002, resulting in higher aggregated net earnings over this period than previously reported.

37.    On April 11, 2006, MuniMae issued a press release announcing its financial results for the fourth quarter and year end of 2005, the period ending December 31, 2005. For the quarter, the Company reported net earnings of $16.1 million, diluted earnings per share of $0.42 and CAD per share of $0.78. Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> We accomplished a great deal in 2005. We closed the acquisitions of MONY Realty Capital and Glaser Financial which significantly expanded the mortgage banking products we offer as well as the services we can provide to institutional investors. In addition, we reorganized our operations to improve profitability and client service for many years to come. With greater diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term.

38.    MuniMae's financial results for the fourth quarter and year end of 2005, the period ending December 31, 2005, were repeated in the Company's Report on Form 10-K, filed with the SEC on or about June 22, 2006 and signed by defendants Falcone, Joseph and Lundquist, among others.

39.    On September 13, 2006, the Company issued a press release announcing that it would restate its previously-filed consolidated financial statements for the three month period ended March 31, 2006, as well as for the years ended December 31, 2005, 2004 and 2003. In that regard, the press release stated:

> The restatement will not impact cash available for distribution, a supplemental non-GAAP performance measure reported by the Company in addition to net earnings, in any period, or the Company's ability to pay future distributions to common shareholders.
>
> In connection with previously announced efforts to improve its financial reporting processes, the Company identified the need to record adjustments for errors related primarily to three main areas: accounting for syndication fees, accounting for equity commitments related to affordable housing projects and the classification of cash received from investors in guaranteed tax credit equity funds.

40.    MuniMae's financial results for the first quarter of 2006, the period ending March 31, 2006, were reported in the Company's Report on Form 10-Q, filed with the SEC on or about August 1, 2006 and signed by defendant Lundquist.

41.    On November 16, 2006, the Company issued a press release announcing that one of its subsidiaries, MuniMae TE Bond Subsidiary, LLC ("TEBS"), had completed a $192 million fixed rate bond securitization with a private placement of Class A TEBS Tax-Exempt Multifamily Housing Certificates, Series 2006A.  The press release stated that the "net proceeds will be used to refinance $177 million of floating rate TEBS senior obligations and originate investments in tax exempt revenue bonds."

42.    On February 2, 2007, shares of the Company's stock closed at $31.74 per share.  By February 9, 2007, shares of the Company's stock closed at $26.61 per share – a more than 16% difference in the closing price on February 2, 2007.

43.    On February 9, 2007, the Company issued a press release announcing that it " knows of no reason why the recent trading of the stock has resulted in a decrease in price." In that regard, the press release continued as follows:

> Management of the Company is aware of recent developments in the sub-prime mortgage lending markets; however, to clarify, the Company is not engaged in sub-prime or any other single family mortgage lending activities.  In fact, the debt and equity financings arranged by the Company in the housing sector are for multi-family rental properties.  The Company's outlook for the multi-family rental sector is positive."

44.    On November 30, 2007, shares of the Company's stock closed at $17.22 per share. By December 12, 2007, shares of the Company's stock closed at $13.25 per share – a more than 23% difference in the closing price on November 30, 2007.

45.    On December 13, 2007, the Company issued a press release announcing that it is "not aware of any pending transaction or event that might give rise to the recent volatility in the

Company's stock price. In addition, management wants to reiterate that the Company is not engaged in sub-prime or any other single family mortgage lending activities."

46. The statements referenced above in ¶¶23-24, 26, 29-31, 33, 35-40, 43 and 45 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts:

(a)    that MuniMae was materially overstating its financial performance by failing to properly account for its interests in certain entities;

(b)    that MuniMae was: (i) failing to timely write-down the fair value of its "held-for-sale" loans, bonds, derivatives, mortgage servicing rights and guarantee obligations; and (ii) materially overstating the fair value of these assets;

(c)    that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition;

(d)    based on the foregoing, MuniMae's Class Period financial statements were materially false and misleading when issued and not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)    that the Company was performing poorly and would soon be forced to cut its dividend.

47. Then, on January 28, 2008, the Company announced that it was reducing its dividend distribution from $0.5250 to $0.33 per share. With regard to the reduction of the dividend, the press release stated:

> The reduction in the dividend distribution from $0.5250 to $0.33 per share is due to the cost of the Company's ongoing restatement of its financial statements, the decision by the Company to conserve capital to protect the long-term prospects of the business given the current volatility in the credit and capital markets, and the desire to dedicate additional capital to the high-growth Renewable Energy Finance business, an increasingly important part of the Company's business.

The Company also admitted that its previously-issued financial results and financial statements materially overstated the Company's financial performance and that the Company's financial statements were not prepared in accordance with GAAP. Specifically, the Company stated that it would likely be restating its financial statements for the years ended December 31, 2006, 2005 and 2004. Moreover, the Company would likely lose its eligibility of trading on the NYSE due to the fact that it would not be filing its Annual Report on Form 10-K for the year ended December 31, 2006 by the deadline imposed by the NYSE.

48.    In response to the announcement of the restatement, the price of MuniMae stock dropped from $17.20 per share to $9.19 per share, on extremely heavy trading volume.

49.    On January 29, 2008, the Company filed its Form 8-K with the SEC. The Form 8-K provided more information on the Company's announcement regarding the restatement of its financial results. In that regard, the Form 8-K stated:

> The press release discusses the pending restatement of our audited financial statements for the year ended December 31, 2005 and 2004. That restatement has not been completed; however, we expect that the restatement will reflect the following changes to our accounting policies:
>
> • Inclusion in our consolidated financial statements of approximately 200 variable interest entities of which we are deemed the primary beneficiary even though we own only small minority equity interests. The impact of consolidating previously unconsolidated ventures results in a substantial increase in the total assets on our balance sheet, in which we have a minor ownership interest. The net income impact may be negatively affected by (i) inclusion of our share of losses of the consolidated entities, to the extent such losses are in excess of our general partner investments in those entities and (ii) inclusion of any amount by which the limited partners' shares of losses of consolidated entities exceeds their equity in those entities.
>
> • Changes in the way we recognize revenue for our low income housing tax credit business, the largest impact of which is the deferral of revenue (syndication fees and asset management fees) related to guaranteed funds. In addition, the consolidation of these entities results in our eliminating asset management and guarantee fees, which we previously had recognized as a separate revenue item, and reflecting them instead as a component of the net income that results from the consolidation of these funds.

• Changes in the way we account for loans, including the fair value of our held-for-sale loans we used in determining the lower of cost or market value of these loans, changes in the way we determine which held-for-investment loans are impaired and the amount of the impairment, and changes in the recognition of loan origination costs.

• Changes with respect to our accounting for derivatives, including recognizing additional types of contracts as derivatives that must be marked to market, and other changes that affect the timing of profit and loss recognition.

• Recognition of additional guarantee obligations as liabilities and changing the way some recourse obligations are amortized to income.

• Changes to the estimated fair values of some of our bonds, derivatives, mortgage servicing rights and guarantee obligations, including increasing the value of some servicing rights we obtained through acquisitions or retained when loans were sold, which reduces the future income we will recognize with regard to those servicing rights.

• Other changes in accounting relating to bonds, mortgage servicing rights, equity investments, equipment, leases, including changes to the amortization and depreciation with regard to certain assets.  In addition, we corrected our purchase accounting on some acquisitions, determination of our share of earnings and losses on investments accounted for under the equity method, and manner and timing of recognition of expenses with regard to share based compensation awards (none of which involved option backdating).

Because neither the restatement nor the audit of our restated financial statements has been completed, it is possible that there will be additional changes as a result of the restatement.  The changes as a result of the restatement will affect our financial statements for the year ended December 31, 2006 and subsequent years, as well as the financial statements that are being restated.

50.    Upon this news, the price of MuniMae's stock continued to fall to $7.13 per share.

51.    The market for MuniMae's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, MuniMae's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired MuniMae common stock relying upon the integrity of the market price of MuniMae's common stock and market information relating to MuniMae, and have been damaged thereby.

- 18 -

52.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of MuniMae's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

53.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about MuniMae's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of MuniMae and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of MuniMae stock was removed and the price of MuniMae stock declined dramatically, causing loss to Plaintiff and the other members of the Class.

**Additional Scienter Allegations**

54.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding MuniMae, their control over and/or receipt and/or modification of MuniMae's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning MuniMae, participated in the fraudulent scheme alleged herein.

55.    Defendants were further motivated to engage in this course of conduct in order to allow Defendants Falcone, Harrison and Joseph and other Company insiders to sell 490,197 shares of their personally-held MuniMae common stock for gross proceeds in excess of $12.5 million. The following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---------|------|--------|-------|----------|
| ROBERT BANKS | 8/19/2004 | 18,000 | $24.48 | $440,640 |
|  | 8/20/2004 | 7,800 | $24.51 | $191,178 |
|  | 8/23/2004 | 7,000 | $24.39 | $170,730 |
|  | 8/24/2004 | 7,500 | $24.43 | $183,225 |
|  | 8/25/2004 | 14,000 | $24.42 | $341,880 |
|  | 8/26/2004 | 27,000 | $24.66 | $665,820 |
|  | 8/27/2004 | 6,200 | $24.79 | $153,698 |
|  | 9/7/2004 | 25,000 | $25.08 | $627,000 |
|  | 9/8/2004 | 11,800 | $25.24 | $297,832 |
|  | 9/9/2004 | 13,100 | $25.24 | $330,644 |
|  | 9/10/2004 | 9,900 | $25.09 | $248,391 |
|  | 9/13/2004 | 17,600 | $25.16 | $442,816 |
|  | 9/14/2004 | 9,000 | $25.04 | $225,360 |
|  | 9/15/2004 | 9,600 | $25.09 | $240,864 |
|  |  | 183,500 |  | $4,560,078 |
|  |  |  |  |  |
| ANGELA BARONE | 8/5/2004 | 2,100 | $24.00 | $50,400 |
|  | 8/5/2004 | 400 | $24.12 | $9,648 |
|  | 11/19/2004 | 1,300 | $25.92 | $33,696 |
|  | 11/19/2004 | 600 | $25.93 | $15,558 |
|  | 11/19/2004 | 500 | $26.05 | $13,025 |
|  | 11/19/2004 | 100 | $25.94 | $2,594 |
|  |  | 5,000 |  | $124,921 |
|  |  |  |  |  |
| EARL COLE | 11/18/2004 | 2,500 | $26.19 | $65,475 |
|  | 11/18/2004 | 2,300 | $26.10 | $60,030 |
|  | 11/18/2004 | 2,000 | $26.16 | $52,320 |
|  | 11/18/2004 | 1,000 | $26.21 | $26,210 |
|  | 3/29/2005 | 1,800 | $24.70 | $44,460 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 3/29/2005 | 1,200 | $24.73 | $29,676 |
| | | 10,800 | | $278,171 |
| | | | | |
| MICHAEL FALCONE | 4/1/2004 | 4,987 | $25.68 | $128,066 |
| | 7/9/2004 | 4,626 | $24.00 | $111,024 |
| | 7/12/2004 | 500 | $24.00 | $12,000 |
| | 8/10/2004 | 1,200 | $23.75 | $28,500 |
| | 8/10/2004 | 1,000 | $24.05 | $24,050 |
| | 8/10/2004 | 1,000 | $24.05 | $24,050 |
| | 8/10/2004 | 1,000 | $24.01 | $24,010 |
| | 10/1/2004 | 5,028 | $25.16 | $126,504 |
| | 1/3/2005 | 4,910 | $29.67 | $145,680 |
| | 4/1/2005 | 5,100 | $24.41 | $124,491 |
| | 7/1/2005 | 3,500 | $25.99 | $90,965 |
| | 7/1/2005 | 1,000 | $25.91 | $25,910 |
| | 7/1/2005 | 400 | $25.94 | $10,376 |
| | 7/1/2005 | 73 | $25.95 | $1,894 |
| | 10/3/2005 | 6,364 | $24.49 | $155,854 |
| | 1/3/2006 | 6,217 | $25.95 | $161,331 |
| | 4/3/2006 | 6,177 | $26.37 | $162,887 |
| | | 53,082 | | $1,357,594 |
| | | | | |
| WILLIAM HARRISON | 12/1/2004 | 3,500 | $26.47 | $92,645 |
| | 12/1/2004 | 3,300 | $26.40 | $87,120 |
| | 12/1/2004 | 2,000 | $26.42 | $52,840 |
| | 12/1/2004 | 1,600 | $26.44 | $42,304 |
| | 12/1/2004 | 1,600 | $26.43 | $42,288 |
| | 12/1/2004 | 1,400 | $26.30 | $36,820 |
| | 12/1/2004 | 1,200 | $26.45 | $31,740 |
| | 12/1/2004 | 900 | $26.36 | $23,724 |
| | 12/1/2004 | 800 | $26.41 | $21,128 |
| | 12/1/2004 | 700 | $26.35 | $18,445 |
| | 12/1/2004 | 600 | $26.46 | $15,876 |
| | 12/1/2004 | 600 | $26.33 | $15,798 |
| | 12/1/2004 | 300 | $26.38 | $7,914 |
| | 12/1/2004 | 300 | $26.34 | $7,902 |
| | 12/1/2004 | 200 | $26.39 | $5,278 |
| | 12/2/2004 | 6,800 | $26.23 | $178,364 |
| | 12/2/2004 | 2,000 | $26.25 | $52,500 |
| | 12/2/2004 | 1,200 | $26.55 | $31,860 |
| | 12/2/2004 | 500 | $26.24 | $13,120 |
| | 12/2/2004 | 500 | $26.21 | $13,105 |
| | 12/2/2004 | 500 | $26.20 | $13,100 |
| | 12/2/2004 | 400 | $26.22 | $10,488 |
| | 12/2/2004 | 300 | $26.30 | $7,890 |
| | 12/2/2004 | 100 | $26.33 | $2,633 |
| | 12/2/2004 | 100 | $26.32 | $2,632 |
| | 12/3/2004 | 11,600 | $26.20 | $303,920 |
| | | 43,000 | | $1,131,434 |
| | | | | |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| MARK JOSEPH | 4/27/2005 | 3,750 | $24.50 | $91,875 |
| | 4/27/2005 | 3,750 | $24.50 | $91,875 |
| | 5/16/2005 | 3,750 | $24.50 | $91,875 |
| | 5/23/2005 | 3,750 | $24.58 | $92,175 |
| | 6/7/2005 | 3,750 | $25.44 | $95,400 |
| | 6/21/2005 | 3,750 | $25.83 | $96,863 |
| | 7/5/2005 | 7,500 | $26.00 | $195,000 |
| | 7/7/2005 | 7,500 | $26.36 | $197,700 |
| | 7/21/2005 | 7,500 | $26.48 | $198,600 |
| | 8/8/2005 | 7,500 | $26.02 | $195,150 |
| | 8/22/2005 | 7,500 | $26.00 | $195,000 |
| | 9/7/2005 | 7,500 | $26.22 | $196,650 |
| | 9/21/2005 | 3,750 | $25.15 | $94,313 |
| | 10/7/2005 | 1,650 | $24.50 | $40,425 |
| | 10/10/2005 | 2,000 | $24.50 | $49,000 |
| | 10/11/2005 | 100 | $24.50 | $2,450 |
| | 10/21/2005 | 1,150 | $24.53 | $28,210 |
| | 10/24/2005 | 2,600 | $24.50 | $63,700 |
| | 11/9/2005 | 3,750 | $24.50 | $91,875 |
| | 11/21/2005 | 3,750 | $25.00 | $93,750 |
| | 12/7/2005 | 3,750 | $25.76 | $96,600 |
| | 12/21/2005 | 3,750 | $25.59 | $95,963 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500 |
| | 1/9/2006 | 7,500 | $26.48 | $198,600 |
| | 1/23/2006 | 7,500 | $26.75 | $200,625 |
| | 2/7/2006 | 3,750 | $26.50 | $99,375 |
| | 2/7/2006 | 3,750 | $26.25 | $98,438 |
| | 2/21/2006 | 7,500 | $27.03 | $202,725 |
| | 3/7/2006 | 7,500 | $26.35 | $197,625 |
| | 3/21/2006 | 7,500 | $26.26 | $196,950 |
| | 4/7/2006 | 7,500 | $26.30 | $197,250 |
| | 4/21/2006 | 7,500 | $26.75 | $200,625 |
| | 5/8/2006 | 7,500 | $26.75 | $200,625 |
| | 5/22/2006 | 7,500 | $26.75 | $200,625 |
| | 6/7/2006 | 3,565 | $27.45 | $97,859 |
| | | 179,815 | | $4,680,769 |
| | | | | |
| GARY MENTESANA | 11/17/2004 | 9,800 | $26.10 | $255,780 |
| | 11/17/2004 | 1,500 | $26.12 | $39,180 |
| | 11/17/2004 | 1,200 | $26.07 | $31,284 |
| | 11/17/2004 | 1,000 | $26.13 | $26,130 |
| | 11/17/2004 | 800 | $26.05 | $20,840 |
| | 11/17/2004 | 400 | $26.16 | $10,464 |
| | 11/17/2004 | 300 | $26.11 | $7,833 |
| | | 15,000 | | $391,511 |
| | | | | |
| **Grand Total:** | | **490,197** | | **$12,524,477** |

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

56.     At all relevant times, the market for MuniMae's common stock was an efficient market for the following reasons, among others:

(a)     MuniMae's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, MuniMae filed periodic public reports with the SEC and the NYSE;

(c)     MuniMae regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     MuniMae was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly-available and entered the public marketplace.

57.     As a result of the foregoing, the market for MuniMae's common stock promptly digested current information regarding MuniMae from all publicly-available sources and reflected such information in MuniMae's stock price.   Under these circumstances, all purchasers of MuniMae's common stock during the Class Period suffered similar injury through their purchase of MuniMae's common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of MuniMae who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of MuniMae publicly-traded securities during the Class Period.

62.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MuniMae stock.  Plaintiff and the Class would not have purchased MuniMae stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of MuniMae common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of MuniMae within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of MuniMae and their ownership of MuniMae stock, the Individual Defendants had the power and authority to cause MuniMae to engage in the wrongful conduct complained of herein.  MuniMae controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and MuniMae are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  February 4, 2008               COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                       SAMUEL H. RUDMAN
                                       DAVID A. ROSENFELD
                                       MARIO ALBA, JR.


                                       /s/ SAMUEL H. RUDMAN
                                             SAMUEL H. RUDMAN

                                       58 South Service Road, Suite 200
                                       Melville, NY  11747
                                       Telephone:  631/367-7100
                                       631/367-1173 (fax)

                                       *Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JULES ROTHUS ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 12/12/07 | 800 | $15.00 |
|  |  |  |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 1/30/08 | 8 00 | $6.70 |
|  |  |  |
|  |  |  |

5.     Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

MUNICIPAL MORTGAGE

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _30_ day of _JANUARY_, 2008.

JULES ROTHUS

MUNICIPAL MORTGAGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
JULES ROTHAS, Individually and on Behalf  :  Civil Action No. 08-cv-01120
of All Others Similarly Situated,              :
                                   :  <u>CLASS ACTION</u>
                  Plaintiff,  :
                                   :  COMPLAINT FOR VIOLATIONS OF
   vs.                             :  FEDERAL SECURITIES LAWS
                                   :
MUNICIPAL MORTGAGE & EQUITY     :
L.L.C., MARK K. JOSEPH, MICHAEL L.  :
FALCONE, WILLIAM S. HARRISON,    :
MELANIE M. LUNDQUIST and DAVID B.  :
KAY,                                    :
                                   :
                  Defendants.  :
                                   :
———————————————————— x

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Municipal Mortgage & Equity L.L.C. ("MuniMae" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the securities of MuniMae between May 3, 2004 and January 28, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Jules Rothas, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of MuniMae at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant MuniMae and its subsidiaries arrange debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services for institutional investors.

8.      (a)      Defendant Mark K. Joseph ("Joseph") was Chairman and Chief Executive Officer of MuniMae until December 2004.  Joseph is, and at all relevant times was, the Company's Chairman.

(b)      Defendant Michael L. Falcone ("Falcone") has been MuniMae's President and Chief Executive Officer since January 2005.  Prior to that, Falcone was the Company's President and Chief Operating Officer.

(c)      Defendant William S. Harrison ("Harrison") was MuniMae's Executive Vice President and Chief Financial Officer until December 2005.

(d)      Defendant Melanie M. Lundquist ("Lundquist") was MuniMae's Chief Financial Officer from December 2005 to July 2007.

(e)      Defendant David B. Kay ("Kay") has been MuniMae's Chief Financial Officer since November 2007.

(f)      Defendants Joseph, Falcone, Harrison, Lundquist and Kay are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal

- 2 -

corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications, as alleged herein, are the collective actions of the narrowly-defined group of defendants identified above.  Each of the above officers of MuniMae, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, was traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that

the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with MuniMae, each of the Individual Defendants had access to the adverse undisclosed information about MuniMae's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about MuniMae and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MuniMae common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.

- 4 -

The scheme: (i) deceived the investing public regarding MuniMae's business, operations, management and the intrinsic value of MuniMae common stock; (ii) enabled Defendants Falcone, Harrison and Joseph and other Company insiders to sell 490,197 shares of their personally-held MuniMae common stock for gross proceeds in excess of $12.5 million; (iii) allowed the Company to raise gross proceeds of $68.3 million through the public offering of 2,575,000 common shares; (iv) enabled certain subsidiaries of the Company to raise capital through private placements; and (v) caused Plaintiff and other members of the Class to purchase MuniMae common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of MuniMae during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MuniMae common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by MuniMae or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts, as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MuniMae; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     Defendant MuniMae and its subsidiaries arrange debt and equity financing for developers and owners of real estate and clean energy projects.  The Company also provides investment management and advisory services for institutional investors.

22.    As detailed further herein, Defendant MuniMae has announced that it will be restating its financial statements for the years ended December 31, 2004 and 2005 and possibly for the year ended December 31, 2006 and subsequent years.  The restatement is an admission that MuniMae's Class Period financial statements were materially false and misleading when issued.

23.    The Class Period begins on May 3, 2004.  On that date, MuniMae issued a press release announcing its financial results for the first quarter of 2004, the period ending March 31, 2004.  For the quarter, the Company reported net income allocated to common shares of $1.2 million, diluted earnings per share of $0.04 and cash available for distribution ("CAD") per common share of $0.37.  Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> We are very pleased with the Company's results for the first quarter.  As we had previously advised our investors, we expected first quarter results to come in below the prior-year figures due to seasonality in our tax credit equity syndication business, which we significantly expanded through a July 2003 acquisition.  While our CAD per share for the first quarter of 2004 did come in below the prior-year results, it significantly exceeded our expectations.  This was largely due to strong results in our tax credit equity unit during the quarter.  Based in part on the Company's results and our outlook for the remainder of the year, our Board of Directors recently raised the quarterly distribution to holders of our common shares to $0.4575, an increase of 3% over the same period in 2003.

24.    On August 2, 2004, MuniMae issued a press release announcing its financial results for the second quarter of 2004, the period ending June 30, 2004.  For the quarter, the Company reported net income allocated to common shares of $11.2 million, diluted earnings per share of $0.32 and CAD per common share of $0.61.  Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> We are extremely pleased to have been able to raise our distribution for thirty consecutive quarters.  So far this year we are outperforming our own and analysts' expectations, particularly in our tax credit equity business, and we expect to finish the year somewhere between 2% and 4% above analyst current consensus expectations of $2.22.

25.    On September 2, 2004, the Company issued a press release announcing that MFH Financial Trust I, a subsidiary of Midland Financial Holdings, Inc. ("Midland"), completed the sale of $24,000,000 of its 9.5% trust preferred securities. Midland is an indirect wholly owned subsidiary of MuniMae. The press release stated that "[Midland] will use the proceeds to repay a portion of an inter-company loan from MuniMae. MuniMae, in turn, intends to use its proceeds for general corporate purposes."

26.    On November 10, 2004, MuniMae issued a press release announcing its financial results for the third quarter of 2004, the period ending September 30, 2004. For the quarter, the Company reported net income of $11.6 million, diluted earnings per share of $0.33 and CAD per common share of $0.72. Defendant Joseph, commenting on the results, stated, in pertinent part, as follows:

> MuniMae is pleased to continue its long history of steady growth in cash generated by our businesses. The Company has recently declared its 31st consecutive increase in its distribution to common shareholders. Despite higher regulatory and compliance costs, particularly those related to the Sarbanes-Oxley Act of 2002 our management team continues to deliver strong results.

27.    On February 2, 2005, the Company issued a press release announcing that it raised gross proceeds of $68.3 million through the public offering of 2,575,000 common shares at a price of $26.51 per share.

28.    On March 15, 2005, the Company issued a press release announcing that MFH Financial Trust II, a subsidiary of MMA Financial Holdings, Inc. ("MMA Financial"), completed the sale of $50,000,000 of its 8.05% trust preferred securities to TABERNA Preferred Funding I, Ltd. and Merrill Lynch International. MMA Financial is an indirect wholly owned subsidiary of MuniMae. The press release stated that "[MMA Financial] will use the proceeds to repay a portion of a loan from an affiliate and other indebtedness of [MMA Financial] and its affiliates, and for general corporate purposes."

- 8 -

29.    On March 16, 2005, MuniMae issued a press release announcing its financial results for the fourth quarter and year end of 2004, the period ending December 31, 2004.  For the quarter, the Company reported net income of approximately $5.6 million, diluted earnings per share of $0.16 and CAD per share of $0.63.  Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> By capitalizing on the synergies between our tax credit business and our tax-exempt and taxable lending businesses, we successfully structured over $2.5 billion in multifamily and other real estate investments, which is a 68% increase over 2003 production.  As a result, our [CAD] per common share grew 9% over 2003, representing our 8th consecutive year of CAD per share growth.

With regard to certain segments of the Company, the press release stated:

> Investing Segment
>
> During the three months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $145.4 million in par value, which is a 5% increase as compared to $138.1 million for the three months ended December 31, 2003.
>
> For the twelve months ended December 31, 2004, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $401.6 million, which represents a 60% increase as compared to $250.4 million for the twelve months ended December 31, 2003.
>
> Of the 2004 total, $321.1 million of the financings were tax-exempt bonds secured by affordable multifamily housing properties.  The remaining $80.5 million were investments in Community Development District Bonds ("CDD") secured by assessments pledged by local governments for community infrastructure projects.
>
> Tax Credit Equity Segment
>
> MuniMae's Tax Credit Equity segment ended 2004 on a very strong note.  During the three months ended December 31, 2004, the Company raised tax credit equity of approximately $487.9 million bringing the Company's total tax credit equity raised during 2004 to approximately $1.1 billion.  In addition to representing an increase of 99% over 2003, this accomplishment distinguished MuniMae as one of only two companies to surpass the $1 billion mark in tax credit equity raised during a calendar year.  MuniMae had approximately $6 billion in tax credit equity assets under management as of December 31, 2004.

- 9 -

In addition, during the fourth quarter, the Company made equity investments in tax credit properties totaling $303.2 million. These equity investments brought the Company's total twelve-month investment activity to $846.3 million, which is an increase of approximately 86% as compared to 2003 and, we believe, a record breaking amount for the industry for a single year.

Other accomplishments of the Tax Credit Equity segment in 2004 included the establishment of a guaranteed tax credit equity program with Merrill Lynch, through which the Company raised $165 million in investor equity, and the development and implementation of a joint program to improve our marketing of tax credit equity and bond financing to developers.

Real Estate Finance Segment

MuniMae's Real Estate Finance segment production was approximately $348.1 million during the three months ended December 31, 2004, bringing the segment's total production for the twelve months ended December 31, 2004, to approximately $1.0 billion. This represents a 45% increase over the 2003 production volume and brought the segment's total assets under management to approximately $2.1 billion as of December 31, 2004.

30.    MuniMae's financial results for the fourth quarter and year end of 2004, the period ending December 31, 2004, were repeated in the Company's Report on Form 10-K, filed with the SEC on or about March 16, 2005 and signed by defendants Falcone, Joseph and Harrison, among others.

31.    On May 2, 2005, MuniMae issued a press release announcing its financial results for the first quarter of 2005, the period ending March 31, 2005. For the quarter, the Company reported net income of $2.2 million, diluted earnings per share of $0.06 and CAD per share of $0.42. Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

We had a productive first quarter and remain on track to meet our overall earnings per share and CAD per share targets for fiscal year 2005. Our business volumes continue to grow in our major business segments. In addition, during the quarter we completed a successful public offering of common equity and a private placement of subsidiary trust preferred securities, which together raised $118 million of capital. Finally, we closed a small but strategically important acquisition of an established business, which we have re-branded MMA Realty Capital and which we expect to form the cornerstone of an expanded fund management business targeting pension funds, insurance companies and other institutional investors.

- 10 -

With regard to certain segments of the Company's business, the press release stated:

> Investing Segment: During the three months ended March 31, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments for financings totaling approximately $55.3 million in par value, which is a 12% increase as compared to $49.3 million for the three months ended March 31, 2004. All of the first quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits.

> Tax Credit Equity Segment: During the three months ended March 31, 2005, the Company raised $107.4 million in tax credit equity, representing an 18% increase over the three months ended March 31, 2004. In the first quarter of 2005, MuniMae also closed its largest tax credit equity fund to date, raising $319 million from sixteen corporate investors.

> Real Estate Finance Segment: MuniMae's Real Estate Finance segment production was approximately $161.3 million during the three months ended March 31, 2005, which represents a 22% decrease as compared with the three months ended March 31, 2004. If not for a single $66.7 million construction loan transaction closed in the first quarter of 2004, we would have shown a year-over-year increase in first quarter production of 14% for this segment.

32.     On July 1, 2005, the Company issued a press release announcing that it closed on the purchase of Glaser Financial Group, Inc. The purchase price of approximately $67 million was paid in a combination of cash and stock.

33.     On July 28, 2005, MuniMae issued a press release announcing its financial results for the second quarter of 2005, the period ending June 30, 2005. For the quarter, the Company reported GAAP diluted earnings per share of $0.58 and CAD of $0.55 per share. Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> MuniMae had a productive second quarter and, though our year-to-date CAD per share is essentially flat as compared with the first half of 2004, it was above our internal budget. Moreover, based on a review of our pipeline and business prospects for the remainder of the year, we are on track to meet or slightly exceed the current analysts' consensus CAD estimate of $2.41 for fiscal 2005.

> We are increasingly seeing the benefits of the diversification strategy we have pursued for the past six years. While the persistent low interest rate environment is causing pricing pressure in some of our business lines, particularly in our tax-exempt bond business, we are simultaneously benefiting from a strong seller's market for multifamily properties, and we are seeking to take advantage of this market to

- 11 -

harvest significant gains on some of our equity investments and bonds. The regular realization of gains on sale has been part of our overall business plan for several years, and the pricing we have seen this year has generally met or exceeded our going-in return expectations for these investments. We remain committed to our strategy of diversifying our product offerings while building scale, both through acquisitions and through organic growth in our existing businesses. In this connection, we are very pleased to have closed the Glaser Financial acquisition, which gives us new product capabilities, additional scale in our DUS lending franchise, geographic diversification in our loan servicing portfolio and a strong management team.

With regard to certain segments of the Company's business, the press release stated:

Investing Segment: For the three and six months ended June 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $40.7 million and $96.0 million in par value, representing a decrease of 67% and 44% as compared to the three months and six months ended June 30, 2004, respectively. All of the second quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

Tax Credit Equity Segment: For the three and six months ended June 30, 2005, MuniMae raised $215.3 million and $322.7 million of tax credit equity, representing a decrease of 12% and 4% as compared to the three months and six months ended June 30, 2004, respectively. For the three and six months ended June 30, 2005, MuniMae invested $220.2 million and $394.2 million in tax credit properties, representing an increase of 15% and 18% as compared to the three months and six months ended June 30, 2004, respectively.

Real Estate Finance Segment: For the three and six months ended June 30, 2005, MuniMae's Real Estate Finance segment production was $315.4 million and $476.8 million, representing an increase of 4% and a decrease of 7% as compared to the three months and six months ended June 30, 2004, respectively.

34.     On November 4, 2005, the Company issued a press release announcing that MuniMae TE Bond Subsidiary, LLC ("TEB"), an indirect wholly owned subsidiary of MuniMae, completed a $100 million private placement of rated tax-exempt perpetual preferred shares with a weighted average distribution rate of 5.43%. The press release stated that "TEB intends to use the net proceeds from this offering to acquire investments that produce tax-exempt interest income and for general corporate purposes, which may include the repayment of indebtedness of TEB to an affiliated entity."

35.    On November 7, 2005, MuniMae issued a press release announcing its financial results for the third quarter of 2005, the period ending September 30, 2005.  For the quarter, the Company reported net income of $20.4 million, diluted earnings per share of $0.52 and CAD of $0.76 per share.  Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> Although our tax-exempt bond originations in 2005 have fallen significantly below 2004 levels, production volumes remain strong in our other lines of business, and the continued low interest rate environment has enabled us to sell selected investments at very attractive cap rates.  We remain confident in our outlook for the rest of the year, and based on our current pipeline, we expect CAD per share for the fiscal year 2005 to be at least $2.43.

With regard to certain segments of the Company's business, the press release stated:

> Investing Segment: For the three and nine months ended September 30, 2005, MuniMae acquired tax-exempt bonds and entered into forward funding commitments totaling approximately $80.2 million and $176.2 million in par value, representing decreases of 6% and 31% as compared to the three months and nine months ended September 30, 2004, respectively.  All of the third quarter 2005 financings were tax-exempt multifamily revenue bonds associated with low-income housing tax credits syndicated by MuniMae and other third party syndicators.

> Tax Credit Equity Segment: For the three and nine months ended September 30, 2005, MuniMae raised $370.2 million and $692.9 million of tax credit equity, representing an increase of 32% and 12% as compared to the three months and nine months ended September 30, 2004, respectively.  For the three and nine months ended September 30, 2005, MuniMae invested $254.5 million and $595.6 million in tax credit properties, representing increases of 22% and 10% as compared to the three months and nine months ended September 30, 2004, respectively.

> Real Estate Finance Segment: For the three and nine months ended September 30, 2005, MuniMae's Real Estate Finance segment production was $726.8 million and $1,240.2 million, representing an increase of 293% and 78% as compared to the three months and nine months ended September 30, 2004, respectively.  Increased production in this segment was driven largely by taxable debt production from the business formerly known as Glaser Financial, acquired on July 1, 2005, and production within the Company's fund management business, which grew significantly as a result of an acquisition that closed in February 2005.

36.    On March 10, 2006, the Company issued a press release announcing that it restated net earnings for the nine month period ended September 30, 2005, as well as fiscal years 2004, 2003 and 2002, resulting in higher aggregated net earnings over this period than previously reported.

37.     On April 11, 2006, MuniMae issued a press release announcing its financial results for the fourth quarter and year end of 2005, the period ending December 31, 2005.  For the quarter, the Company reported net earnings of $16.1 million, diluted earnings per share of $0.42 and CAD per share of $0.78.  Defendant Falcone, commenting on the results, stated, in pertinent part, as follows:

> We accomplished a great deal in 2005.  We closed the acquisitions of MONY Realty Capital and Glaser Financial which significantly expanded the mortgage banking products we offer as well as the services we can provide to institutional investors.  In addition, we reorganized our operations to improve profitability and client service for many years to come.  With greater diversity of revenue sources, a more efficient operating platform and a distribution that represents a lower percentage of CAD, MuniMae is well positioned for continued growth over the long-term.

38.     MuniMae's financial results for the fourth quarter and year end of 2005, the period ending December 31, 2005, were repeated in the Company's Report on Form 10-K, filed with the SEC on or about June 22, 2006 and signed by defendants Falcone, Joseph and Lundquist, among others.

39.     On September 13, 2006, the Company issued a press release announcing that it would restate its previously-filed consolidated financial statements for the three month period ended March 31, 2006, as well as for the years ended December 31, 2005, 2004 and 2003.  In that regard, the press release stated:

> The restatement will not impact cash available for distribution, a supplemental non-GAAP performance measure reported by the Company in addition to net earnings, in any period, or the Company's ability to pay future distributions to common shareholders.

> In connection with previously announced efforts to improve its financial reporting processes, the Company identified the need to record adjustments for errors related primarily to three main areas: accounting for syndication fees, accounting for equity commitments related to affordable housing projects and the classification of cash received from investors in guaranteed tax credit equity funds.

40.    MuniMae's financial results for the first quarter of 2006, the period ending March 31, 2006, were reported in the Company's Report on Form 10-Q, filed with the SEC on or about August 1, 2006 and signed by defendant Lundquist.

41.    On November 16, 2006, the Company issued a press release announcing that one of its subsidiaries, MuniMae TE Bond Subsidiary, LLC ("TEBS"), had completed a $192 million fixed rate bond securitization with a private placement of Class A TEBS Tax-Exempt Multifamily Housing Certificates, Series 2006A.  The press release stated that the "net proceeds will be used to refinance $177 million of floating rate TEBS senior obligations and originate investments in tax exempt revenue bonds."

42.    On February 2, 2007, shares of the Company's stock closed at $31.74 per share.  By February 9, 2007, shares of the Company's stock closed at $26.61 per share – a more than 16% difference in the closing price on February 2, 2007.

43.    On February 9, 2007, the Company issued a press release announcing that it " knows of no reason why the recent trading of the stock has resulted in a decrease in price." In that regard, the press release continued as follows:

> Management of the Company is aware of recent developments in the sub-prime mortgage lending markets; however, to clarify, the Company is not engaged in sub-prime or any other single family mortgage lending activities.  In fact, the debt and equity financings arranged by the Company in the housing sector are for multi-family rental properties.  The Company's outlook for the multi-family rental sector is positive."

44.    On November 30, 2007, shares of the Company's stock closed at $17.22 per share. By December 12, 2007, shares of the Company's stock closed at $13.25 per share – a more than 23% difference in the closing price on November 30, 2007.

45.    On December 13, 2007, the Company issued a press release announcing that it is "not aware of any pending transaction or event that might give rise to the recent volatility in the

Company's stock price. In addition, management wants to reiterate that the Company is not engaged in sub-prime or any other single family mortgage lending activities."

46.    The statements referenced above in ¶¶23-24, 26, 29-31, 33, 35-40, 43 and 45 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts:

(a)    that MuniMae was materially overstating its financial performance by failing to properly account for its interests in certain entities;

(b)    that MuniMae was: (i) failing to timely write-down the fair value of its "held-for-sale" loans, bonds, derivatives, mortgage servicing rights and guarantee obligations; and (ii) materially overstating the fair value of these assets;

(c)    that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition;

(d)    based on the foregoing, MuniMae's Class Period financial statements were materially false and misleading when issued and not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

(e)    that the Company was performing poorly and would soon be forced to cut its dividend.

47.    Then, on January 28, 2008, the Company announced that it was reducing its dividend distribution from $0.5250 to $0.33 per share. With regard to the reduction of the dividend, the press release stated:

> The reduction in the dividend distribution from $0.5250 to $0.33 per share is due to the cost of the Company's ongoing restatement of its financial statements, the decision by the Company to conserve capital to protect the long-term prospects of the business given the current volatility in the credit and capital markets, and the desire to dedicate additional capital to the high-growth Renewable Energy Finance business, an increasingly important part of the Company's business.

- 16 -

The Company also admitted that its previously-issued financial results and financial statements materially overstated the Company's financial performance and that the Company's financial statements were not prepared in accordance with GAAP. Specifically, the Company stated that it would likely be restating its financial statements for the years ended December 31, 2006, 2005 and 2004. Moreover, the Company would likely lose its eligibility of trading on the NYSE due to the fact that it would not be filing its Annual Report on Form 10-K for the year ended December 31, 2006 by the deadline imposed by the NYSE.

48.    In response to the announcement of the restatement, the price of MuniMae stock dropped from $17.20 per share to $9.19 per share, on extremely heavy trading volume.

49.    On January 29, 2008, the Company filed its Form 8-K with the SEC. The Form 8-K provided more information on the Company's announcement regarding the restatement of its financial results. In that regard, the Form 8-K stated:

> The press release discusses the pending restatement of our audited financial statements for the year ended December 31, 2005 and 2004. That restatement has not been completed; however, we expect that the restatement will reflect the following changes to our accounting policies:
>
> • Inclusion in our consolidated financial statements of approximately 200 variable interest entities of which we are deemed the primary beneficiary even though we own only small minority equity interests. The impact of consolidating previously unconsolidated ventures results in a substantial increase in the total assets on our balance sheet, in which we have a minor ownership interest. The net income impact may be negatively affected by (i) inclusion of our share of losses of the consolidated entities, to the extent such losses are in excess of our general partner investments in those entities and (ii) inclusion of any amount by which the limited partners' shares of losses of consolidated entities exceeds their equity in those entities.
>
> • Changes in the way we recognize revenue for our low income housing tax credit business, the largest impact of which is the deferral of revenue (syndication fees and asset management fees) related to guaranteed funds. In addition, the consolidation of these entities results in our eliminating asset management and guarantee fees, which we previously had recognized as a separate revenue item, and reflecting them instead as a component of the net income that results from the consolidation of these funds.

- 17 -

• Changes in the way we account for loans, including the fair value of our held-for-sale loans we used in determining the lower of cost or market value of these loans, changes in the way we determine which held-for-investment loans are impaired and the amount of the impairment, and changes in the recognition of loan origination costs.

• Changes with respect to our accounting for derivatives, including recognizing additional types of contracts as derivatives that must be marked to market, and other changes that affect the timing of profit and loss recognition.

• Recognition of additional guarantee obligations as liabilities and changing the way some recourse obligations are amortized to income.

• Changes to the estimated fair values of some of our bonds, derivatives, mortgage servicing rights and guarantee obligations, including increasing the value of some servicing rights we obtained through acquisitions or retained when loans were sold, which reduces the future income we will recognize with regard to those servicing rights.

• Other changes in accounting relating to bonds, mortgage servicing rights, equity investments, equipment, leases, including changes to the amortization and depreciation with regard to certain assets.  In addition, we corrected our purchase accounting on some acquisitions, determination of our share of earnings and losses on investments accounted for under the equity method, and manner and timing of recognition of expenses with regard to share based compensation awards (none of which involved option backdating).

Because neither the restatement nor the audit of our restated financial statements has been completed, it is possible that there will be additional changes as a result of the restatement.  The changes as a result of the restatement will affect our financial statements for the year ended December 31, 2006 and subsequent years, as well as the financial statements that are being restated.

50.    Upon this news, the price of MuniMae's stock continued to fall to $7.13 per share.

51.    The market for MuniMae's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, MuniMae's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired MuniMae common stock relying upon the integrity of the market price of MuniMae's common stock and market information relating to MuniMae, and have been damaged thereby.

- 18 -

52.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of MuniMae's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

53.    At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about MuniMae's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of MuniMae and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.  When the true facts about the Company were revealed to the market, the inflation in the price of MuniMae stock was removed and the price of MuniMae stock declined dramatically, causing loss to Plaintiff and the other members of the Class.

### Additional Scienter Allegations

54.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding MuniMae, their control over and/or receipt and/or modification of MuniMae's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning MuniMae, participated in the fraudulent scheme alleged herein.

55.    Defendants were further motivated to engage in this course of conduct in order to allow Defendants Falcone, Harrison and Joseph and other Company insiders to sell 490,197 shares of their personally-held MuniMae common stock for gross proceeds in excess of $12.5 million. The following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| ROBERT BANKS | 8/19/2004 | 18,000 | $24.48 | $440,640 |
| | 8/20/2004 | 7,800 | $24.51 | $191,178 |
| | 8/23/2004 | 7,000 | $24.39 | $170,730 |
| | 8/24/2004 | 7,500 | $24.43 | $183,225 |
| | 8/25/2004 | 14,000 | $24.42 | $341,880 |
| | 8/26/2004 | 27,000 | $24.66 | $665,820 |
| | 8/27/2004 | 6,200 | $24.79 | $153,698 |
| | 9/7/2004 | 25,000 | $25.08 | $627,000 |
| | 9/8/2004 | 11,800 | $25.24 | $297,832 |
| | 9/9/2004 | 13,100 | $25.24 | $330,644 |
| | 9/10/2004 | 9,900 | $25.09 | $248,391 |
| | 9/13/2004 | 17,600 | $25.16 | $442,816 |
| | 9/14/2004 | 9,000 | $25.04 | $225,360 |
| | 9/15/2004 | 9,600 | $25.09 | $240,864 |
| | | 183,500 | | $4,560,078 |
| | | | | |
| ANGELA BARONE | 8/5/2004 | 2,100 | $24.00 | $50,400 |
| | 8/5/2004 | 400 | $24.12 | $9,648 |
| | 11/19/2004 | 1,300 | $25.92 | $33,696 |
| | 11/19/2004 | 600 | $25.93 | $15,558 |
| | 11/19/2004 | 500 | $26.05 | $13,025 |
| | 11/19/2004 | 100 | $25.94 | $2,594 |
| | | 5,000 | | $124,921 |
| | | | | |
| EARL COLE | 11/18/2004 | 2,500 | $26.19 | $65,475 |
| | 11/18/2004 | 2,300 | $26.10 | $60,030 |
| | 11/18/2004 | 2,000 | $26.16 | $52,320 |
| | 11/18/2004 | 1,000 | $26.21 | $26,210 |
| | 3/29/2005 | 1,800 | $24.70 | $44,460 |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| | 3/29/2005 | 1,200 | $24.73 | $29,676 |
| | | 10,800 | | $278,171 |
| | | | | |
| MICHAEL FALCONE | 4/1/2004 | 4,987 | $25.68 | $128,066 |
| | 7/9/2004 | 4,626 | $24.00 | $111,024 |
| | 7/12/2004 | 500 | $24.00 | $12,000 |
| | 8/10/2004 | 1,200 | $23.75 | $28,500 |
| | 8/10/2004 | 1,000 | $24.05 | $24,050 |
| | 8/10/2004 | 1,000 | $24.05 | $24,050 |
| | 8/10/2004 | 1,000 | $24.01 | $24,010 |
| | 10/1/2004 | 5,028 | $25.16 | $126,504 |
| | 1/3/2005 | 4,910 | $29.67 | $145,680 |
| | 4/1/2005 | 5,100 | $24.41 | $124,491 |
| | 7/1/2005 | 3,500 | $25.99 | $90,965 |
| | 7/1/2005 | 1,000 | $25.91 | $25,910 |
| | 7/1/2005 | 400 | $25.94 | $10,376 |
| | 7/1/2005 | 73 | $25.95 | $1,894 |
| | 10/3/2005 | 6,364 | $24.49 | $155,854 |
| | 1/3/2006 | 6,217 | $25.95 | $161,331 |
| | 4/3/2006 | 6,177 | $26.37 | $162,887 |
| | | 53,082 | | $1,357,594 |
| | | | | |
| WILLIAM HARRISON | 12/1/2004 | 3,500 | $26.47 | $92,645 |
| | 12/1/2004 | 3,300 | $26.40 | $87,120 |
| | 12/1/2004 | 2,000 | $26.42 | $52,840 |
| | 12/1/2004 | 1,600 | $26.44 | $42,304 |
| | 12/1/2004 | 1,600 | $26.43 | $42,288 |
| | 12/1/2004 | 1,400 | $26.30 | $36,820 |
| | 12/1/2004 | 1,200 | $26.45 | $31,740 |
| | 12/1/2004 | 900 | $26.36 | $23,724 |
| | 12/1/2004 | 800 | $26.41 | $21,128 |
| | 12/1/2004 | 700 | $26.35 | $18,445 |
| | 12/1/2004 | 600 | $26.46 | $15,876 |
| | 12/1/2004 | 600 | $26.33 | $15,798 |
| | 12/1/2004 | 300 | $26.38 | $7,914 |
| | 12/1/2004 | 300 | $26.34 | $7,902 |
| | 12/1/2004 | 200 | $26.39 | $5,278 |
| | 12/2/2004 | 6,800 | $26.23 | $178,364 |
| | 12/2/2004 | 2,000 | $26.25 | $52,500 |
| | 12/2/2004 | 1,200 | $26.55 | $31,860 |
| | 12/2/2004 | 500 | $26.24 | $13,120 |
| | 12/2/2004 | 500 | $26.21 | $13,105 |
| | 12/2/2004 | 500 | $26.20 | $13,100 |
| | 12/2/2004 | 400 | $26.22 | $10,488 |
| | 12/2/2004 | 300 | $26.30 | $7,890 |
| | 12/2/2004 | 100 | $26.33 | $2,633 |
| | 12/2/2004 | 100 | $26.32 | $2,632 |
| | 12/3/2004 | 11,600 | $26.20 | $303,920 |
| | | 43,000 | | $1,131,434 |
| | | | | |

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| MARK JOSEPH | 4/27/2005 | 3,750 | $24.50 | $91,875 |
| | 4/27/2005 | 3,750 | $24.50 | $91,875 |
| | 5/16/2005 | 3,750 | $24.50 | $91,875 |
| | 5/23/2005 | 3,750 | $24.58 | $92,175 |
| | 6/7/2005 | 3,750 | $25.44 | $95,400 |
| | 6/21/2005 | 3,750 | $25.83 | $96,863 |
| | 7/5/2005 | 7,500 | $26.00 | $195,000 |
| | 7/7/2005 | 7,500 | $26.36 | $197,700 |
| | 7/21/2005 | 7,500 | $26.48 | $198,600 |
| | 8/8/2005 | 7,500 | $26.02 | $195,150 |
| | 8/22/2005 | 7,500 | $26.00 | $195,000 |
| | 9/7/2005 | 7,500 | $26.22 | $196,650 |
| | 9/21/2005 | 3,750 | $25.15 | $94,313 |
| | 10/7/2005 | 1,650 | $24.50 | $40,425 |
| | 10/10/2005 | 2,000 | $24.50 | $49,000 |
| | 10/11/2005 | 100 | $24.50 | $2,450 |
| | 10/21/2005 | 1,150 | $24.53 | $28,210 |
| | 10/24/2005 | 2,600 | $24.50 | $63,700 |
| | 11/9/2005 | 3,750 | $24.50 | $91,875 |
| | 11/21/2005 | 3,750 | $25.00 | $93,750 |
| | 12/7/2005 | 3,750 | $25.76 | $96,600 |
| | 12/21/2005 | 3,750 | $25.59 | $95,963 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500 |
| | 1/3/2006 | 3,750 | $26.00 | $97,500 |
| | 1/9/2006 | 7,500 | $26.48 | $198,600 |
| | 1/23/2006 | 7,500 | $26.75 | $200,625 |
| | 2/7/2006 | 3,750 | $26.50 | $99,375 |
| | 2/7/2006 | 3,750 | $26.25 | $98,438 |
| | 2/21/2006 | 7,500 | $27.03 | $202,725 |
| | 3/7/2006 | 7,500 | $26.35 | $197,625 |
| | 3/21/2006 | 7,500 | $26.26 | $196,950 |
| | 4/7/2006 | 7,500 | $26.30 | $197,250 |
| | 4/21/2006 | 7,500 | $26.75 | $200,625 |
| | 5/8/2006 | 7,500 | $26.75 | $200,625 |
| | 5/22/2006 | 7,500 | $26.75 | $200,625 |
| | 6/7/2006 | 3,565 | $27.45 | $97,859 |
| | | 179,815 | | $4,680,769 |
| | | | | |
| GARY MENTESANA | 11/17/2004 | 9,800 | $26.10 | $255,780 |
| | 11/17/2004 | 1,500 | $26.12 | $39,180 |
| | 11/17/2004 | 1,200 | $26.07 | $31,284 |
| | 11/17/2004 | 1,000 | $26.13 | $26,130 |
| | 11/17/2004 | 800 | $26.05 | $20,840 |
| | 11/17/2004 | 400 | $26.16 | $10,464 |
| | 11/17/2004 | 300 | $26.11 | $7,833 |
| | | 15,000 | | $391,511 |
| | | | | |
| **Grand Total:** | | **490,197** | | **$12,524,477** |

## Applicability of Presumption of Reliance:
## Fraud on the Market Doctrine

56.    At all relevant times, the market for MuniMae's common stock was an efficient market for the following reasons, among others:

(a)    MuniMae's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, MuniMae filed periodic public reports with the SEC and the NYSE;

(c)    MuniMae regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    MuniMae was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly-available and entered the public marketplace.

57.    As a result of the foregoing, the market for MuniMae's common stock promptly digested current information regarding MuniMae from all publicly-available sources and reflected such information in MuniMae's stock price.   Under these circumstances, all purchasers of MuniMae's common stock during the Class Period suffered similar injury through their purchase of MuniMae's common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

58.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of MuniMae who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of MuniMae publicly-traded securities during the Class Period.

62.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MuniMae stock.  Plaintiff and the Class would not have purchased MuniMae stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

63.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of MuniMae common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    The Individual Defendants acted as controlling persons of MuniMae within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers and/or directors of MuniMae and their ownership of MuniMae stock, the Individual Defendants had the power and authority to cause MuniMae to engage in the wrongful conduct complained of herein.  MuniMae controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and MuniMae are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  February 4, 2008                     COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             MARIO ALBA, JR.


                                             /s/ SAMUEL H. RUDMAN
                                                 SAMUEL H. RUDMAN

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             *Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

JULES ROTHUS ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 12/12/07 | 800 | $15.00 |
|  |  |  |
|  |  |  |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 1/30/08 | 8 00 | $6.70 |
|  |  |  |
|  |  |  |

5.      Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

MUNICIPAL MORTGAGE

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _30_ day of _JANUARY_, 2008.

_____
JULES ROTHUS

MUNICIPAL MORTGAGE